[Crim. No. 13857.   Second Dist., Div. Four.   Jan. 20, 1969]

THE PEOPLE, Plaintiff and Respondent, v. DAWUD SABU HAKEEM, Defendant and Appellant.

Corinne S. Shulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and John C. Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

KINGSLEY, J.—In case No. 311,803, defendant was charged with four counts of violations of section 11501 of the Health and Safety Code (sale of narcotics). A motion to dismiss under section 995 of the Penal Code was made and was granted as to count I. Thereafter, defendant pled guilty to that same count. In case No. 314,404, defendant was charged with one count of possession of heroin for sale, in violation of section 11500.5. Thereafter that case was consolidated with case No. 311,803, the count in No. 314,404 becoming count V of the consolidated information. Originally, defendant had pled not guilty to that count but, after the court had indicated that it would refer him to Department 95 for consideration under section 3051 of the Welfare and Institutions Code,

defendant, then represented by counsel of his own selection, withdrew his not guilty plea and pled guilty to count V.

As the court had indicated that it would, it caused proceedings under the Narcotic Rehabilitation Act to be instituted, defendant was found to be an addict, and was committed to the California Rehabilitation Center. More than 90 days thereafter, he was returned to the court from the center, having been rejected by it on the basis of "extensive and chronic criminality." Defendant was then sentenced to the state prison on counts I and V, the sentences to run concurrently.[1] He has appealed. We reverse as to count I but affirm as to count V.

### Count I

Defendant contends, and the Attorney General admits, that there was error in accepting a plea to count I and in sentencing defendant thereon. Once that count had been dismissed under section 995, the court had lost jurisdiction to take any further proceedings on that count. That part of the judgment must be reversed.

### Count V

Defendant urges error as to count V on four grounds: (1) That the plea of guilty was based on an express promise of leniency which was not fulfilled; (2) That the trial court erred in not considering whether or not the action of the superintendent at Narco in rejecting defendant was an abuse of discretion; (3) That it appears from the record that there was an abuse of discretion; and (4) That the trial court erred in not explaining to defendant the effect and meaning of his plea of guilty and the punishment possible thereon. We find none of these merit a reversal.

### I

The chief answer to the first contention is that, although defendant's trial counsel expressed the opinion that "this is an unfortunate situation," he, at no time, sought to withdraw the guilty plea. Absent such a motion, the trial court could do no more or less than it did—namely to sentence defendant on the plea theretofore entered.

In the second place, such a motion, had it been made, need not have been granted. The only promise that the trial court had made was that it would cause proceedings to be

[1]The record is silent as to the disposition of counts II, III and IV in case No. 311,803.

instituted under the Narcotic Rehabilitation Act. That course was followed and defendant was committed under that act. The court's promise was fully carried out. No one promised defendant that he would not be rejected at the center. In fact, the record indicates that it was in everyone's mind that he might even be rejected at the Department 95 hearing and not be committed at all.[2] The case at bench thus differs from *People* v. *Coley* (1968) 257 Cal.App.2d 787 [65 Cal.Rptr. 559], wherein it appears that the promise made to defendant was not merely that proceedings would be instituted but that he would actually be accepted by the Rehabilitation Center for treatment, and that, if not accepted, the plea of guilty could be withdrawn. (257 Cal.App.2d at p. 801.)

## II

Defendant's second contention has heretofore been determined adversely to him. While the court may review the action of the superintendent where he relies on the "other relevant reason" language of the statute, to the extent of determining whether the reason cited is legally relevant, it has no power (except to the limited extent hereinafter discussed) to redetermine whether or not defendant's past criminality is of such a nature and extent as to disqualify him for the treatment program. As we said in *People* v. *Marquez* (1966) 245 Cal.App.2d 253, at pages 256-257 [53 Cal.Rptr. 854]: "It will be noted that the determination of eligibility by the judiciary is, thus, not only tentative and subject to review by the Director of Corrections and his staff, but that the judicial decision is cast in terms of a negative— that is to say, the judge institutes commitment proceedings 'unless in [his] opinion . . . the defendant's record and probation report indicates such a pattern of criminality that he does not constitute a fit subject for commitment. . . .' (Welf. & Inst. Code, § 3051, formerly Pen. Code, § 6451.) But the judge has no expertise to decide, and the statute does not assume that he will decide, that the defendant, in fact, is a fit subject for commitment and treatment, judged either by his past record or by his ability (for reasons either of character, intelligence or aptitude) to respond to treatment; the judicial decision is merely that, as far as the court's limited knowl-

---

[2] "THE COURT: At this time, I am going to certify this matter to Department 95 under Section 3051 of the Welfare and Institutions Code. "Shall I continue it here?

"THE CLERK: No. If they reject him, they put it on the calendar.

"THE COURT: You will be remanded. Bail exonerated."

·edge about defendant, and the judge's nonexpert opinion, permit, it is worthwhile to try the rehabilitation program in his case. ■ But whether or not any given defendant can be treated with success is a fact which, in the last analysis, must be determined not by judges but by people trained in that field and actually engaged in the treatment process. Hence, out of practical necessity, the statute leaves to the professional experts the final decision on whether or not treatment should be begun or be continued.''

### III

. Defendant's claim that the superintendent abused ·his discretion in rejecting him for the treatment program rests on three grounds:

(1) That the criminality relied on included offenses known to the trial court· when it instituted the commitment proceedings. That argument is a mere restatement of the previous one and is answered fully in the language above · quoted· from *Marquez.*

■ (2) That the superintendent ignored statements by his staff which showed that defendant had responded favorably in the time he had been under observation at the institution. But the decision to accept or reject is vested by law in the Director of Corrections and in his delegate, the superintendent. While that officer should ''consider'' the reports ·from his staff, he is not bound by them.

■ (3) That the superintendent relied in part on a hearsay statement contained ·in an interview with a police· sergeant. While, for the reasons above stated, a trial court has no ·jurisdiction (and no competence) to evaluate the significance of criminality on a defendant's fitness for treatment, it does have both· power and competence, if requested, to determine whether, or, not the ''criminality'' relied on by the superintendent actually existed. But, although defendant's trial counsel referred to the fact that the sergeant had been repeating hearsay, he made no clear contention that the statement was untrue, nor did he expressly seek a hearing as to the truth of the report or make any kind of offer of proof in that regard. Under these circumstances, he cannot object here.

■ (4) Defendant was represented at the time of his plea, and during the negotiations which led up to it, by counsel of his own choosing. Under those circumstances, and in the absence of any other showing, the trial court, and we, may assume that defendant had been advised by his own counsel as

to the effect of his plea and of the risks he ran. The trial court's duty in that respect arises only when it is tendered a guilty plea by a defendant appearing in propria persona.

The judgment on count I is reversed; the judgment on count V is affirmed.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied February 4, 1969, and appellant's petition for a hearing by the Supreme Court was denied March 19, 1969.